## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| _____ ) | |
| ) | |
| INTERNATIONAL BROTHERHOOD ) | Civil Action No. **23-cv-633** |
| OF TEAMSTERS, AIRLINE DIVISION) | |
| 25 Louisiana Avenue NW ) | (Jury Trial Demanded) |
| Washington, DC 20001 ) | |
| ) | |
| and ) | |
| ) | |
| TEAMSTERS LOCAL UNION 970 ) | |
| 3001 University Ave., SE Suite 300 ) | |
| Minneapolis, MN 55414, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| SUN COUNTRY, INC., doing business ) | |
| as SUN COUNTRY AIRLINES, ) | |
| 2005 Cargo Road, Minneapolis, MN ) | |
| 55450-5545 ) | |
| ) | |
| and ) | |
| ) | |
| SUN COUNTRY AIRLINES ) | |
| HOLDINGS, INC., ) | |
| 2005 Cargo Road, Minneapolis, MN ) | |
| 55450-5545, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## PLAINTIFFS' VERIFIED COMPLAINT
## FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF,
## DECLARATORY RELIEF AND DAMAGES

Plaintiffs International Brotherhood of Teamsters, Airline Division ("IBT" or

the "Union") and Teamsters Local Union 970 ("IBT Local 970") for their Complaint

against Defendants Sun Country, Inc., doing business as Sun Country Airlines, and

Sun Country Holdings, Inc. (collectively "Defendant" or "Sun Country" or the "Carrier") hereby state:

## JURISDICTION AND VENUE

1.    This is an action brought, *inter alia,* pursuant to the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, (hereinafter "the RLA" or "the Act"). This Court has subject matter jurisdiction as follows: (a) under 28 U.S.C. § 1331 because the case arises under the laws of the United States, namely, the RLA; (b) under 28 U.S.C. § 1337 because the matter in controversy arises under an Act of Congress regulating commerce, namely, the RLA; and (c) under 28 U.S.C. §§ 2201 and 2202 because this is an actual controversy in which the Plaintiffs seek declaratory judgment.

2.    The injunctive relief sought by this action is necessary to stop the Defendant's unlawful retaliation against fleet service workers who openly and publicly exercised their rights to advocate for union representation, including the Carrier's discharge of union supporters just two weeks after they won their election for Teamsters representation conducted by the National Mediation Board ("NMB"). Sun Country has retaliated against these workers in violation of Sections 2, Third and Fourth of the RLA, 45 U.S.C. § 152, Third and Fourth, which among other things, prohibit "interference…influence or coerc[ion]" in employees' choice to form, join or support a union.

3.    Venue under 28 U.S.C. § 1391(b)(2) and (3) is proper, and personal jurisdiction over Defendant exists in this District wherein Defendant is located, where a substantial part of the events or omissions giving rise to the claims

occurred, where the unlawful discharges took place, where labor relations policy is promulgated, where the Carrier, IBT Local 970 and several witnesses are found, and where the Carrier regularly conducts business operations and has substantial contacts.

## THE PARTIES

4.     Plaintiff IBT is a labor organization and is the "representative," as defined by Section 1, Sixth of the RLA, 45 U.S.C. § 151, Sixth, of the craft or class of Fleet Service Employees of Defendant Sun Country. The IBT is headquartered at 25 Louisiana Avenue, Washington, DC 20001. This action is brought by the IBT in its own behalf and for and in the interests of all IBT-represented employees in the service of Defendant.

5.     Plaintiff IBT Local 970 is a labor organization headquartered at 3001 University Ave., SE Suite 300, Minneapolis, Minnesota 55414. It is a chartered affiliate of the IBT to which the IBT has delegated the exclusive responsibility of providing day-to-day representation to the IBT-represented Fleet Service workers employed by Sun Country.

6.     Defendant Sun Country, Inc. is a common carrier by air engaged in interstate commerce within the meaning of 45 U.S.C. § 181 and is subject to the general duties of Section 2 of the RLA, 45 U.S.C. § 152. It is headquartered at 2005 Cargo Road, Minneapolis, Minnesota 55450. It is doing business as Sun Country Airlines.

7.     Defendant Sun Country Airlines Holdings, Inc. is also headquartered at 2005 Cargo Road, Minneapolis, Minnesota 55450. On information and belief: 1) it owns and controls Sun Country, Inc., and there is   significant interrelation of operations between the companies; 2) there is significant overlap in management between the companies, including managers whose conduct underlie the allegations in this case; 3) this overlap also includes centralized control of labor relations for both companies in this District; 4) there is common financial control of Sun Country, Inc; and 5) therefore, these companies operate as a single integrated enterprise in this District.

8.     Discriminatee Sylvester "Sly" Oliver is a fleet service employee for Sun Country who worked for the Carrier for more than two years since October 26, 2021. The Carrier discharged him on or about January 21, 2023 for engaging in union activity. He was an employee of Sun Country, as defined by Section 1, Fifth of the RLA, 45 U.S.C. § 151, Fifth, at the time of his discharge.

9.     Discriminatee Monique Crisp is a fleet service employee for Sun Country who worked for the Carrier for approximately one year, from February 2022 to February 2, 2023, when she was discharged by the Carrier for engaging in union activity. She was an employee of Sun Country, as defined by Section 1, Fifth of the RLA, 45 U.S.C. § 151, Fifth, at the time of her discharge.

10.     On information and belief, Discriminatees John and Jane Doe(s) 1 through 10 were fleet service employees for Sun Country who worked for the Carrier. They were discharged by the Carrier after the Union election for engaging

in lawful union activity, including without limitation those who were affected by the Carriers' tightening of enforcement of work rules in retaliation for electing the Union. All of them were employee(s) of Sun Country, as defined by Section 1, Fifth of the RLA, 45 U.S.C. § 151, Fifth, at the time of their discharges.

11.     This action is brought by the Plaintiffs on their own behalf and in the interest of all employees in the craft or class of Fleet Service Employees at Sun Country. The Discriminatees are supporters of the IBT and, along with their co-workers, have elected the IBT as their collective bargaining representative under the RLA.

12.     The Union is seeking to bargain a first labor contract with Sun Country and the Carrier's unlawful actions are motivated by antiunion animus and are designed to undermine the Union to weaken its position in such Section 6 bargaining under the RLA and otherwise destroy it by attacking its supporters and Union leaders.

## FACTS

### A. Termination of Fleet Service Employee and IBT Member Sylvester "Sly" Oliver

13.     Mr. Sly Oliver was hired by Sun Country on October 26, 2021, as a part-time Ramp Agent at the Minneapolis-St. Paul International Airport ("MSP").

14.     He had not received any discipline or corrective action from Sun Country until January 21, 2023, the date of his termination, which was just over two weeks since the Union won the election against Sun Country.

15.     Prior to his termination and beginning in approximately February 2022, Mr. Oliver had become heavily involved in the effort to organize the Sun Country fleet service employees to become unionized Teamsters. This effort involved, among other things, the collection of Union authorization cards, signed by these employees, authorizing the IBT to petition the NMB to investigate a representation dispute, and authorizing the IBT to represent them in collective bargaining.

16.     Mr. Oliver had been open and public about his Union support and activity for the Union, and Sun Country knew about it during the Teamsters organizing drive.

17.     On January 4, 2023, after a duly conducted election in accordance with Section 2, Ninth of the RLA, 45 U.S.C. § 152, Ninth, the NMB certified the IBT as the exclusive representative for purposes of the RLA of the craft or class of Fleet Service Employees of Sun Country. *See Sun Country, Inc.*, 50 N.M.B. 9 (2023).

18.     On January 10, 2023, just five days after the Union election victory, Mr. Oliver placed a call to Sun Country Ramp Manager Keith Cannon asking about the proper process for bringing IBT Local 970 President Mr. Chad Reichow onto the ramp to visit the new Teamster members.

19.     On January 13, 2023, Mr. Oliver met Mr. Reichow at Terminal 2 at around 7:32 a.m. following this Carrier process. This was not on Mr. Oliver's work time; he was working later that day.

20. Mr. Oliver and Mr. Reichow went to the MSP Terminal 2 authorization security door and were met by airport security screeners. Mr. Oliver showed his badge.

21. The screeners took down Mr. Reichow's driver's license and cell phone number.

22. Mr. Oliver and Mr. Reichow then went to the bag room and spoke with one fleet service employee there for about five minutes.

23. They then proceeded to the break room. They spoke with one female fleet service employee there, and Mr. Oliver showed Mr. Reichow where to put a Teamsters flyer. They also noticed Sun Country Supervisor Alexander Peterson, who saw Mr. Reichow's Teamsters jacket. Mr. Peterson's eyes then "got big," and he left.

24. A few minutes later, the Sun Country Senior Shift Manager Van Tor approached them, asked what they were doing there, and said they had to leave because they were "disrupting operations."

25. Mr. Reichow introduced himself and said he was meeting the members. Mr. Tor then asked to see Mr. Oliver's badge. Mr. Oliver and Mr. Reichow apologized and then walked forty feet to the security door to leave.

26. Mr. Oliver then called Ms. Rebecca Gall in Sun Country Human Resources ("HR") on the Carrier-provided Microsoft Teams cell phone application and asked her who was the point person Mr. Reichow needs to talk to gain access to the Union members. Ms. Gall said, "hold on, wait, someone would come."

27.     Some twenty to thirty minutes later, Sun Country Senior Director of Operations Eric Flannery and Sun Country Director of Ramp and Deicing Noah Sanders approached them. They said that Mr. Oliver and Mr. Reichow were "disrupting operations" and that Mr. Reichow was not authorized on the premises.

28.     Mr. Reichow introduced himself and apologized for any inconvenience. He asked for a contact name and wanted to post a Teamster flyer. Eric Flannery asked for his contact information, said he would give it to HR, and also said that even if the spaces they visited were empty, they still had been "disrupting operations."

29.     On January 20, 2023, Mr. Oliver's wife had a surgical procedure. Thus, while he had been scheduled to work, he called off, called a supervisor, and left similar message for Ms. Gall in HR.

30.     At around 5:40 p.m. that day, Sun Country Supervisor Noah Sanders left a voice mail for Mr. Oliver, saying Mr. Oliver was "supposed to have come in."

31.     On January 21, 2023, Mr. Oliver came in early to work overtime. Mr. Oliver typically worked a three-day workweek, with plenty of overtime.

32.     As he walked to the tarmac, he noticed Mr. Sanders and Ms. Gall at the MSP Terminal 2 security access/customer service desk. There, Mr. Sanders told Mr. Oliver: "You're terminated."

33.     Mr. Oliver asked why he was terminated. Mr. Sanders replied that Mr. Oliver had brought an unauthorized person to the tarmac. Mr. Oliver asked if they

had any termination paperwork and they said no. Mr. Oliver then called Mr. Reichow. They talked five minutes on the phone and Mr. Sanders and Ms. Gall left.

34.     Mr. Oliver then called Airport Police and was told he had to turn in his SIDA and Sun Country badges to the police. He did so. Then he left the premises.

35.      Mr. Oliver did not receive anything in writing confirming his termination that day. He learned later by letter from the Carrier dated January 24, 2023, that the Carrier was also terminating him for an absence related to his wife's surgery, for which in the past it had been very lenient.

36.     Based on the above, as well as on other evidence, the Carrier's asserted reasons for Mr. Oliver's termination were pretextual, and rather he was discharged in retaliation for union activity and support.

### B.  Termination of Fleet Service Employee and IBT Member Monique Crisp

37.     Monique Crisp started working at Sun Country in February 2022 as a Ramp Agent, which is part of the craft or class of Fleet Service Employees. As such, she met Sly Oliver there working the night shift. He mentored her.

38.     Mr. Oliver was instrumental in getting the Union organizing started, and Ms. Crisp joined in soon after he told her about it in the summer of 2022. After it started and it was obvious that Mr. Oliver and Ms. Crisp were organizing a union, the Carrier started overloading them on the busiest gates to keep them occupied.

39.     Ms. Crisp and Mr. Oliver both went around the workplace and obtained signed Union authorization cards from fellow Sun Country fleet service employees, eventually getting enough cards to be approved for an NMB election.

40.    Ms. Crisp was open and public about her Union involvement and support. The Carrier had a Microsoft Teams App Group electronic "Chat" for Sun Country ramp workers. She would post pro-union videos on union-busting tactics in the Chat and Sun Country management could see such posts helping to organize the workers.

41.    On or about July 11, 2022, she injured her back at work. Her doctor diagnosed her with muscle spasms and sciatica. X-Rays revealed a disc problem and arthritis in her back. She took some time off from work and then went back with weight restrictions from her doctor. On July 15, 2022, she returned to work but the Company did not offer her any accommodations for her weight restrictions until months later.

42.    After the Union was voted as the representative of fleet service employees on January 4, 2023, her Supervisor Kenny Casey told her during a January 23, 2023 staff meeting: "Because of the Union, we have to crack down" on discipline. He implied that because employees have voted to unionize, the Carrier cannot be lenient anymore. She stood up to him in support of the Union, saying this was not true. Other fleet service workers heard this retaliatory and threatening comment by their Sun Country Supervisor.

43.    Indeed, though the Carrier had been lenient and excused her absences in the past, it became stricter against her now and fired her on February 2, 2023, about a month after the fleet service employees chose Union representation.

44.     Ms. Crisp's termination occurred because another fleet service employee had posted on the Sun Country Teams App that he was looking for someone to cover his shift. He messaged Ms. Crisp, asking to switch shifts with her and she agreed.

45.     Such a switch was permissible under Carrier's work rules.

46.     On February 1, 2023, Ms. Crisp told him they need to put the shift switch into the Carrier's scheduling system. He said his UKG Kronos electronic access application was not working so he could not do so. She said she would message supervisors and a manager herself so this would not be an issue. She told them they were switching days. She saw a message from a supervisor approving the switch and updating the system.

47.     But she later she saw a message from her co-worker saying that he could no longer work her shift as previously agreed. This was sent Tuesday night before the Wednesday shift, but she did not see it until after the shift had already started. It was not her responsibility to cover the shift after the trade was made and accepted.

48.     On her next overtime shift, she came to clock-in to work, and the Sun Country supervisor there said her timecard had been deactivated. Ms. Crisp asked if she was fired. The supervisor told her to go to the bag room.

49.     Ms. Crisp went to the bag room, and the supervisor told her to go to Gate 3. As she was heading to Gate 3, a manager and another woman came up to

her and told her she was terminated, asked for her badge, and walked her out – no questions asked.

50.     Despite it not being her fault regarding the missed shift that was traded, and despite the Carrier's past lenience on such absences, it summarily terminated her.

51.     In a February 2, 2023, termination letter to Ms. Crisp from the Carrier, this prior lenience is evidenced on the face of the letter:

> This letter is to notify you that your employment with Sun Country, Inc. d/b/a Sun Country Airlines is terminated effective February 2nd, 2023, due to attendance.

> Specifically, you were administered a Final Written Warning on 1/11/2023 that addressed 22 points. Your Final Written Warning also states that "any further attendance violations may result in additional disciplinary actions up to and including termination of employment." Since then, you were absent from your scheduled shift on 2/1/23. You are currently at 19 points. Per our Attendance Policy, after 9 points are accrued, an employee is subject to termination. Due to the facts stated above, your employment is terminated effective immediately for attendance.

52.     Based on the above, as well as on other evidence, the Carrier's asserted reasons for Mr. Oliver's termination were pretextual, and rather Ms. Crisp was threatened and then discharged for being a union supporter.

## COUNT ONE

(Violation of Section 2, Third of the Act, 45 U.S.C. § 152, Third)

### Sly Oliver

53.     The allegations of paragraphs 1 through 52 are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

54.     Section 2, Third of the Act, 45 U.S.C. § 152, Third, provides that carriers shall not "interfere with, influence, or coerce" employees in their choice of representative.

55.     Sun Country's discharge of Mr. Oliver for Union support interfered with his rights and the rights of all other Sun Country fleet service employees to designate their choice of representative, as guaranteed by Section 2, Third of the RLA, 45 U.S.C. § 152, Third.

## COUNT TWO

(Violation of Section 2, Fourth of the Act, 45 U.S.C. § 152, Fourth)

### Sly Oliver

56.     The allegations of paragraphs 1 through 54 are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

57.     Section 2, Fourth of the Act, 45 U.S.C. § 152, Fourth, provides in pertinent part:

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing. . . . No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, . . . or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization . . . .

58.     Sun Country's discharge of Sly Oliver for Union support interferes with his rights and the rights of all other Sun Country fleet service employees to join, organize, or assist in organizing the labor organization of their choice, as guaranteed by Section 2, Fourth of the Act, 45 U.S.C. § 152, Fourth.

## COUNT THREE

(Violation of Section 2, Third of the Act, 45 U.S.C. § 152, Third)

### Monique Crisp

59.     The allegations of paragraphs 1 through 58 are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

60.     Sun Country's discharge of Monique Crisp for her Union support interfered with her rights and the rights of all other Sun Country fleet service employees to designate their choice of representative, as guaranteed by Section 2, Third of the Act, 45 U.S.C. § 152, Third.

## COUNT FOUR

(Violation of Section 2, Fourth of the Act, 45 U.S.C. § 152, Fourth)

### Monique Crisp

61.     The allegations of paragraphs 1 through 61 are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

62.     Sun Country's discharge of Monique Crisp for Union support interferes with her rights and the rights of all other Sun Country fleet service employees to join, organize, or assist in organizing the labor organization of their choice, as guaranteed by Section 2, Fourth of the Act, 45 U.S.C. § 152, Fourth.

## COUNT FIVE

(Violation of Section 2, Third of the Act, 45 U.S.C. § 152, Third)

### Stricter Work Rules Because of Union Support

63.    The allegations of paragraphs 1 through 62 are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

64.    Sun Country's tightening of its work rules by stricter application of them on account of the vote for the Union, its discipline of fleet service employees for this reason, and its open threats of stricter discipline and consequent intimidation of fleet service employees for Union support interfered the rights of the Discriminatees and the rights of all Sun Country fleet service employees to designate their choice of representative, as guaranteed by Section 2, Third of the Act, 45 U.S.C. § 152, Third.

## COUNT SIX

(Violation of Section 2, Fourth of the Act, 45 U.S.C. § 152, Fourth)

### Stricter Work Rules Because of Union Support

65.    The allegations of paragraphs 1 through 64 are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

66.    Sun Country's tightening of its work rules by stricter application of them on account of the vote for the Union, its discipline of fleet service employees for this reason, and its open threats of stricter discipline and consequent intimidation of fleet service employees for Union support interfered with their rights the rights of the Discriminatees and the rights of all Sun Country fleet service employees to join, organize, or assist in organizing the labor organization of their choice, as guaranteed by Section 2, Fourth of the Act, 45 U.S.C. § 152, Fourth.

## NECESSITY OF INJUNCTIVE RELIEF

67.     Plaintiffs are likely to succeed on the merits of their actions because their allegations are well pled and supportable.

68.     Plaintiffs, Discriminatees, and all fleet service employees will suffer irreparable harm without an injunction because the collective and individual rights of Sun Country fleet service employees are threatened with permanent harm.

69.     There is no adequate remedy at law because Plaintiffs' and Discriminatees' and the fleet service employees' injuries cannot be remedied with a damages award, but, in any event, under the RLA irreparable harm need not be shown because violation of the Act is the irreparable harm in itself.

70.     The harm that the Plaintiffs, Discriminatees, and the fleet service employees will suffer without the injunction is greater than the harm that preliminary relief would inflict on the Defendant because the relief sought merely requires Defendant to refrain from violating federal labor law, an obligation it already possesses.

71.     An injunction is in the public interest because the public has a strong interest in vindicating the RLA's public policy permitting employees to organize free from interference, influence, or coercion by carriers; hence, the interests of the public are aligned with Plaintiffs herein.

72.     There are no public officers charged with the duty to protect the Union who can furnish adequate protection.

73.    No prior application has been made to this or any other court for the relief requested herein.

74.    Plaintiffs have made every reasonable effort to resolve this dispute to no avail.

75. The unlawful actions of Sun Country will continue to unlawfully undermine the representation of fleet service employees by the Union without immediate relief.

## **RELIEF REQUESTED**

WHEREFORE, the Plaintiffs respectfully request that the Court grant the following relief:

(A)    Declaratory relief finding that the Carrier violated the RLA as set forth in Counts One through Six of this Complaint.

(B)    After conducting a hearing, issue a Preliminary and then Permanent Injunction prohibiting the Defendant from interfering with the selection of a collective bargaining representative by its fleet service employees in the craft or class, and specifically further prohibiting the Carrier from:

1.  Intimidating, coercing, or retaliating against its fleet service employees for exercising their individual or collective rights under the RLA;

2.  Wrongfully discharging, disciplining, or harassing fleet service employees under the RLA;

3. Maintaining an unlawful ban on or disciplining fleet service employees for organizing on non-work time and in non-work areas;

4. Engaging in or creating the impression of unlawful surveillance of fleet service employees concerning their union activity;

5. Threatening fleet service employees with adverse action including without limitation discipline and discharge for their Union activity or support;

6. Discriminating against fleet service employees on account of their union activity or support for the Union;

7. Making false and misleading statements including without limitation allegations about the effect of unionization necessitating stricter discipline with reckless disregard for the truth or falsity thereof;

8. Otherwise violating the rights of its fleet service employees under the RLA.

(C)    Declaratory, preliminary, and permanent injunctive relief requiring the Carrier to immediately reinstate Sylvester Oliver, Monique Crisp, and all affected Discriminatees (John and Jane Doe(s) 1 through 10) to their former positions of employment and provide them work opportunities on the schedule consistent with their seniority as well as restoration of all of their compensation and benefits and other incidents of employment;

(D)     Declaratory, preliminary, and permanent injunctive relief prohibiting the Carrier's practice of threatening or coercing employees for exercising their rights to support a union;

(E)     An Order requiring the Carrier to remove from the Discriminatees' employment files any references to said unlawful discipline and to any activity related to their support of unionization;

(F)     An order requiring the Carrier to conspicuously post copies of the Court's injunctive order at each of its facilities and locations in the United States which are regularly frequented by Sun Country fleet service employees, including without limitation on electronic media such as the Microsoft Teams App and all other Carrier websites, email and media;

(G)     An order requiring the Chief Executive Officer to personally read aloud this injunctive order to employees on paid work time via Carrier physical and virtual meetings with fleet service employees and video via posted on electronic media such as YouTube, Twitter and all other Carrier websites, email and media;

(H)     An order requiring Sun Country to publish the injunctive order, in Spanish and English, in the Carrier's internal newsletter and

mail copies to all employees on the Carrier's payroll going back to the onset of the unlawful labor practices;

(I)    An order requiring Sun Country to publish the injunctive order twice weekly for four weeks in the following publications:

    1. *USA Today* and *The Wall Street Journal*;

    2. a local newspaper of general circulation in every location where the Carrier maintains offices or facilities;

    3. a local newspaper of general circulation in every location where Sun Country fleet service employees are based; and

    4. the aviation industry trade magazine, *Aviation International News* ("AIN").

(J)    An order requiring Sun Country to allow the Union reasonable access to its bulletin boards and all places where notices to employees are customarily posted;

(K)    An order requiring Sun Country to grant the Union access to non-work areas during employees' non-work time;

(L)    An order requiring Sun Country to give the Union notice of, and equal time and facilities for the Union to respond to, and address any claims and allegations made by the Carrier regarding the issue of representation;

(M)    An award of compensatory and punitive damages to all Discriminatees in the case of Sly Oliver, Monique Crisp and all

affected Discriminatees and/or fleet service employees for the unlawful behavior of the Carrier;

(N)    An award of the Plaintiffs' attorneys' fees and costs incurred in bringing this action; and

(O)    Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: March 15, 2023          Respectfully submitted,


/s/ *James Petroff*
James Petroff (*Lead Counsel*) (*pro hac vice* pending)
Joshua D. McInerney (*pro hac vice* pending)
**WENTZ, MCINERNEY, PEIFFER**
   **& PETROFF, LLC**
14 E. Gay Street, Floor 4
Columbus, Ohio 43215
Phone: (614) 756-5566
jpetroff@lawforlabor.com
jmcinerney@lawforlabor.com

Sara J. Geenen
Admitted to Minnesota Bar, ID # 0399844
**THE PREVIANT LAW FIRM, S.C.**
310 West Wisconsin Avenue, Suite 100MW
Milwaukee, WI 53203
Phone: (414) 271-4500
sjg@previant.com

*Counsel for Plaintiffs*

## **VERIFICATION**

Based on my own personal knowledge, I hereby declare as follows:

1. I have reviewed this Complaint.

2. The allegations in its paragraphs 5, 12, 17, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 33, 38, 39, 73 are within my personal knowledge and are factually accurate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 10, 2023.

_____
Chad Reichow, IBT Local 970

## **VERIFICATION**

Based on my own personal knowledge, I hereby declare as follows:

1.  I have reviewed this Complaint.

2.  The allegations in its paragraphs 8, 13, 14, 15, 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 45, 52 and regarding me are within my personal knowledge and are factually accurate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: March 10, 2023.

Sylvester Oliver

## **VERIFICATION**

Based on my own personal knowledge, I hereby declare as follows:

1. I have reviewed this Complaint.

2. The allegations in its paragraphs 9, 37-52 regarding me are within my

   personal knowledge and are factually accurate.

I declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct.

Dated: March 10, 2023.

Monique Crisp